CASE 49—ORDINARY—SEPTEMBER 20, 1883.

## Johnson's adm'r v. Hunt.

APPEAL FROM WARREN CIRCUIT COURT.

1. A plea of accord and satisfaction founded upon services should aver that the services were *accepted* in satisfaction of the plaintiff's demand.    Without such averment of acceptance, the plea is bad.
2. A contract made by an aged man with his grandson, that if the latter will aid the grandfather in inducing a young lady to marry him, write letters to her, and use his influence with the lady to marry the grandfather, the latter will deliver to the grandson a note he holds against him for $5,000 is against the policy of the law, and is void.

3. The interference by one upon an agreement that he is to receive a reward or other consideration if he bring about a marriage, is simply void.

WRIGHT & McELROY, RHODES & SETTLE, WILKINS & SIMS, AND E. W. HINES FOR APPELLANT.

1. Neither the original nor amended answer avers that the services performed by appellee were accepted by the decedent in satisfaction of the note held against appellee by the decedent for $5,000.

2. But the contract relied upon by the appellee, that he was to give his aid and influence in inducing a young lady to marry his grandfather, and that, in consideration thereof, the latter was to surrender to appellee his note for $5,000, is vicious, and cannot be sustained. Such contracts are against the policy of the law, and are void. (Chitty on Cont., sec. 1123; 38 Penn., 149; 42 Iowa, 555; 57 Ga., 448; 33 Ark., 307; 32 *Ib.*, 244; Minor's Inst., vol. 4, 136; 2 Parson's on Cont., 74; 2 Duv., 247; 1 *Ib.*, 278.)

PORTER & PORTER AND NAT. PORTER FOR APPELLEE.

1. The contract set forth in the answer and amended answer is not a "marriage brokage" contract, and has on it no vicious elements.

2. Appellee agreed to write letters for his grandfather and bear messages for him dictated by the former. It does not matter that the letters and messages bear upon and relate to the subject of a matrimonial alliance, they were the production of the decedent. (Chitty on Cont., 581; Parsons on Contr., vol. 2, 74; Farmer v. Gregory, 78 Ky., 476; Merriwether v. Morrison, *Ib.*, 575; O'Reagan v. O'Sullivan, 14 Bush, 184; Hubble v. Murphy, 1 Duv., 279; Murphy v. Hubble, 2 *Ib.*, 252.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellee, George W. Hunt, on the 1st of January in the year 1877, borrowed of his grandfather, Thomas Johnson, the sum of five thousand dollars, for which he executed his note, payable in three years, with eight per cent. interest from the time of its execution.

The grandfather died, and his personal representatives instituted an action at law upon the note, to which the appellee pleaded, in substance, that decedent being a widower, and desirous of again marrying, had offered a relative the sum of ten thousand dollars to aid him in procuring him

a wife, and his relatives (except the appellee) opposing a second marriage, the grandfather, in consideration that the appellee would assist him in procuring a wife, agreed that he would, as compensation therefor, release and give up to the appellee the note in controversy. The name of the young lady having been suggested, the appellee alleges that he wrote letters to her for his grandfather, and did all in his power to accomplish the purpose in view; that he had not only complied with his contract, but used his influence with others to marry his aged relative. He therefore asks that the note be delivered up, &c. To this answer a demurrer was filed and sustained, and thereupon the appellee filed an amended answer, in which he alleges that his grandfather was seventy-seven years of age, feeble, and unable to ride on horseback, and that, in consideration that he, the appellee, would write letters to the young lady for him, and see that they were delivered, &c., that he would give him the note for five thousand dollars; that he fully complied with the agreement by writing the letters and delivering them to the young lady, and therefore the note was fully discharged. The demurrer to the answer, as amended, was overruled, and the case went to the jury upon an issue made by the administrators as to the existence of any such agreement, and a verdict returned for the defendant. The answer is but a plea of accord and satisfaction, and to make such a plea good, it should be alleged that the services performed were accepted in satisfaction of the debt or claim against the defendant, and to allege that the party agreed to accept them in satisfaction is bad pleading. When the accord is to do a thing in satisfaction at a future day, and the act is done and accepted on that day, it is, in law, a satisfaction, and no action can be maintained on the original demand.

The plea must allege that the matter was accepted in satisfaction.    (Hearn v. Kistel, 38 Penn. ; Chitty on Contracts, sec. 1123.)

If the intestate agreed to accept the services of appellee in discharge of the note, and failed to comply with his agreement, if the contract is otherwise unobjectionable, the remedy is by an action for the breach of the contract.    The most fatal objection to the defense is, that the contract, as alleged, is void, and the proof in no manner aids the pleading or verdict rendered.    It is alleged that the grandfather was advanced in years, too feeble to ride, and unable to write, and that the appellee (his grandson) undertook to write his letters to the young lady and deliver them, and the young lady says those letters had reference to a matrimonial alliance with the old gentleman.

The principal witness for the appellee states that, in a conversation with the old man, the latter said he had agreed to give the grandson the note if he would assist him in marrying; that Hunt was to do his writing, &c., and was complying with his agreement.    The same statement is made by other witnesses who speak of conversations with this old man, in which he spoke of his matrimonial prospects, and of the appellee as the instrument through which success was to be accomplished.    He said to a lady witness *that George* was complying with his contract like a Turk.    The defense made, as well as the testimony in support of it, shows clearly (if any contract was made) a marriage brokage agreement, the young man undertaking to bring about the marriage in consideration of the surrender of the note for five thousand dollars.    The interference by one upon an agreement to receive a moneyed or valuable consideration to induce or bring about a marriage between others has always been held void.

Such contracts, if carried out, result in unhappy marital relations, and have been discountenanced by the law. The elementary authorities, as well as the reported cases, all sustain this view of such a contract.

We have seldom seen a more flimsy defense than has been made in this case. The declaration of an old, feeble, and diseased man with reference to a contemplated marriage is made the sole foundation for defeating the recovery.

The appellee promised to pay the note time and again after the death of his grandfather, and there can be no doubt, from the proof in the record, that the statements made by the intestate were mere expressions of an intention to give without any consideration whatever. He died in possession of the note, and it passed into the hands of the administrator. The court below should have sustained the demurrer to the answer, as amended, and failing to do that, should have instructed the jury to find for the plaintiff. (Smith on Contracts, page 221; Cole v. Gibson, 1 Vesey; Denny v. Hook, 1 Vernon; Fonblanque's Equity, 212.)

The judgment below is reversed, and cause remanded, with directions to award a new trial, and to sustain the demurrer to the defense made, and for further proceedings consistent with this opinion.